IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Karen S. Rose, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 20 CV 68 |
| | ) | |
| Steven Pavletich | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

In this action, debtor Karen Rose appeals from the bankruptcy court's order holding a state court judgment in the amount of $250,000 against her and in favor of appellee Steven Pavletich non-dischargeable under § 523(a)(6) of the Bankruptcy Code. For the reasons that follow, I affirm the decision of the Bankruptcy Court.

I.

The parties to this dispute are both residents of Elk Grove Village, Illinois. In October of 2015, Rose posted an expletive-laden diatribe against Pavletich on a Facebook page that Elk Grove Village maintained to inform its residents about local issues and events and to provide a forum for discussion. Bankr. Op, at 1. Chief among Rose's smears was the statement that Pavletich

"cheated" on his wife—a comment Rose repeated on her personal Facebook page. Pavletich sued Rose for defamation in the Circuit Court of Cook County, claiming that Rose's statements were false and that their publication caused him humiliation and damage to his personal and professional reputations. In her answer, Rose denied publishing the statements attributed to her. Her interrogatory responses acknowledged that she had no personal knowledge of Pavletich's infidelity but stated that she had information about it from David Rose (her brother) and Craig Taucher (her then-boyfriend).

The case proceeded for over a year before the court entered a default order against Rose as a sanction for her repeated non-compliance with its discovery orders. On September 15, 2017, following a damages hearing at which Pavletich, his wife, and two other witnesses were questioned by both parties' counsel, but Rose declined to testify, the court entered a judgment in favor of Pavletich and against Rose in the amount of $100,000 in general damages and $150,000 in punitive damages.

The following June, Rose filed for bankruptcy. Pavletich filed an adversary complaint in the bankruptcy proceedings in February of 2019, alleging that Rose's $250,000 judgment debt was non-dischargeable under 11 U.S.C. § 523(a)(6) because it resulted from a willful and malicious injury. Her answer to the adversary complaint—unlike her answer in the defamation case—admitted that

2

Rose posted "the fact that Pavletich cheated on his wife" on Elk Grove Village's and her own Facebook pages but stated affirmatively that she could "prove that that Pavletich had made an admission to others that he had in fact cheated on his wife." Answer at ¶ 9. She again named David and Taucher as witnesses.

The bankruptcy court held an adversary trial at which Taucher and David's wife Carolyn Rose testified. Taucher—whom the court described as "a felon who had been involved in a business dispute with [Pavletich]"—testified that he met Pavletich at The Real Times Sports Bar in Elk Grove Village in 2014 and recognized him as someone who had attended the same high school years earlier. Bankr. Op. at 5. According to Taucher, Pavletich "started speaking negatively about his own wife and volunteered that he had a mistress whose photo he showed Taucher." *Id*. Taucher relayed his encounter with Pavletich to his then-girlfriend, Rose. *Id*. Of Carolyn's testimony, the bankruptcy court stated only that she "was also at the Real Times Sports Bar on the evening in question [and] testified to most of what Taucher said." *Id*.

Pavletich also testified, denying that he told Taucher or Carolyn that he had a mistress and that he showed them a photo of her. Rose did not testify or appear at the trial. *Id*.

The bankruptcy court was unequivocal in its assessment of the testimony:

3

> This court believes Steven. Taucher's bias was strong. He and Steven had a prior business dispute and [Rose] had been his girlfriend. The incentive to fabricate was clear. He wants to help Karen avoid the state court judgment and get back at Steven for their business dispute which was not spelled out at trial. Carolyn Rose's bias is also evident; she wants to protect her sister-in-law.

Bankr. Op. at 5-6. The court went on to weigh the testimony of Rose's witnesses against Pavletich's "strong, credible denials," *id.* at 6, and concluded that Pavletich "values family, supports his family and looks out for his children. Having a mistress and saying that his wife was unattractive and unproductive because she was unemployed were contrary to his character and highly embarrassing," *id.* at 8.

The bankruptcy court placed the burden of proof on Pavletich to establish an exception to discharge by a preponderance of the evidence, *see Grogan v. Garner*, 498 U.S. 279, 287-88 (1991), and concluded that he had done so. The court entered judgment in Pavletich's favor, and this appeal followed.

## II.

I have jurisdiction over Rose's appeal under 28 U.S.C. § 158(a). I review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *In re Berman*, 629 F.3d 761, 766 (7th Cir. 2011). "Where the trial court correctly states the law, its determination of whether the facts met the legal standard will be disturbed only if it is clearly erroneous."

4

*Id*. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (citation and internal quotation marks omitted).

In her opening brief, Rose presents one issue for resolution: "Did the Bankruptcy Court err when it concluded that Debtor acted 'maliciously' in making the statements at issue?" Appellant's Br. at 2. She urges me to decide this issue de novo on the authority of *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC,* 138 S. Ct. 960 (2018), characterizing my task as "primarily legal" because the bankruptcy court "had to take the relatively uncontroversial facts and apply them against a well-defined standard in the case law." Appellant's Br. at 2. Not only does this characterization grossly misstate the bankruptcy court's analysis—which in fact rested on credibility determinations and the resolution of fundamental factual disputes—Rose's citation to *CWCapital Asset Management* only confirms that the clear error standard applies to the question she presents. *See* 138 S. Ct. at 968 (the bankruptcy court's determination that the facts established in the course of proceedings satisfied the "arm's length" test).

This is consistent with the Seventh Circuit's view that whether a debtor behaved maliciously "is ultimately a question of

5

fact reserved for the trier of fact." *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). As the bankruptcy court correctly stated, the inquiry asks whether the debtor acted "in conscious disregard of [her] duties or without just cause or excuse." *See id.*; Bankr. Op. at 7. Rose argues that the bankruptcy court erroneously focused on whether the evidence proved the truth of the statements she published about Pavletich, rather than on whether the evidence established Rose's *belief* in the truth of her statements. There is something to that argument, so far as it goes. *See In re Holland*, 428 B.R. 465, 474 (Bankr. N.D. Ill. 2010) (adversary plaintiff did not establish malice where the evidence supported the debtor's belief in the truth of his false statements); *In re Rizzo*, 337 B.R. 180, 189 (Bankr. N.D. Ill. 2006) ("a defamatory statement is not 'malicious' unless the debtor knew the statement was false when he made it."). But the argument does not go far in this case.

First, the bankruptcy judge roundly discredited the testimony of the only witness who claimed to have told Rose about Pavletich's affair. Indeed, the court could not have been clearer in its unflattering view of Taucher's testimony, citing several reasons for its skepticism, including that Taucher's "bias was strong" because he "want[ed] to help Karen avoid the state court judgment and get back at Steven for their business dispute." Bankr. Op. at 6. Meanwhile, Rose herself declined to testify—a fact from which

6

the bankruptcy court was entitled to draw, and plainly did draw, an adverse inference. *See Boliaux v. Auto. Fin. Corp.*, 459 B.R. 292, 297 (N.D. Ill. 2011); Bankr. Op. at 7. Had Rose testified, the court observed, "Steven or the court could have asked her whether she believed what Taucher and Carolyn Rose told her?" *Id.* at 6. But Rose forwent this opportunity, leaving the record bare of any plausible basis for inferring that she believed the statements she published were true. These facts distinguish this case from both *Holland* and *Rizzo*, where the debtors testified credibly that they genuinely believed in the truth of their false statements.

Second, the bankruptcy court's focus on the truth of Rose's statements was understandable, since that is the issue Rose emphasized from beginning to end of the bankruptcy proceedings. *See* Appellant's Answer to Adversary Compl. at ¶ 8 ("Debtor can prove that that Pavletich had made an admission to others that he had in fact cheated on his wife"); Appellant's SJ Opp., at 8 (opposing summary judgment on the ground that the evidence would enable "a finder of fact to credit the proposition that the statements Debtor made regarding Plaintiff's philandering are true."); Tr. of Bankr. Trial at 74 (per Rose's counsel, dischargeability "turns on whether or not, I guess, you believe that Mr. Pavletich did or didn't cheat on his wife... I think the issue is did he or did he not cheat on his wife."). Even if this

7

focus misaligns with the inquiry in *Holland* and *Rizzo*, the bankruptcy court made clear that it discerned no evidence to support Rose's current theory that her conduct was not malicious because she believed her statements about Pavletich to be true.

Finally, I am not persuaded that reversal is warranted on the ground that the bankruptcy court erroneously placed the burden on Rose to prove what she believed. The court correctly allocated to Pavletich the burden of proving each element of § 523(a)(6), and it correctly held that the maliciousness element is satisfied by evidence that the debtor acted "without just cause or excuse." The court concluded that Pavletich satisfied this standard based on its assessment of the witness testimony coupled with the negative inference it drew from Rose's failure to testify. Because I am not "left with the definite and firm conviction that a mistake has been committed," *Thirtyacre*, 36 F.3d at 700, I affirm the bankruptcy court's decision.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: July 30, 2020

8